IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMMITT WILLIS, | : |
| | : |
| Plaintiff, | : No.  2:21-cv-221 |
| | : |
| v. | : |
| | : |
| JOHN DOE POLICE OFFICER ONE, | : **JURY TRIAL DEMANDED** |
| JONNIE W. SCHOOLEY III, MICHAEL | : |
| MILLER, and [FIRST NAME UNKNOWN] | : |
| GREENER, JOHN DOE POLICE OFFICERS | : |
| 2 through 5, | : |
| | : |
| Defendants. | : |

## **COMPLAINT**

Plaintiff Emmitt Willis ("Mr. Willis"), by his counsel, hereby file this Complaint:

### **INTRODUCTION**

1. On January 3, 2021, John Doe Police Officer violated Mr. Willis' constitutional rights under the Fourth Amendment of the United States Constitution by using excessive force to falsely arrest him. John Doe Police Officer pointed his service weapon directly at Mr. Willis from his police vehicle while it was moving; he caused Mr. Willis to crash his vehicle through his use of force; he used closed fist punches to arrest Mr. Willis even though he was neither resistive nor combative; and he discharged his service weapon within inches of Mr. Willis' back as he was lying defenseless on the ground. John Doe Police Officer then cleared the scene of any evidence of the officer-involved shooting. Schooley, Miller, and Greener (defined *infra*) became aware of all the unconstitutional acts committed by John Doe Police Officer. Nevertheless, instead of investigating John Doe Police Officer, they falsely arrested Mr. Willis to justify the officer-involved shooting, in violation of his constitutional rights under the Fourth Amendment of the United States Constitution.

## PARTIES

2. Mr. Willis is an adult individual residing in Pennsylvania.

3. John Doe Police Officer is an adult individual employed by Raccoon Township Police Department ("RTPD") at 1234 PA-18, West Aliquippa, Pennsylvania 15001, which is a department of Raccoon Township. At all relevant times, John Doe Police Officer acted under color of state law, in the scope of his employment and in accordance with the policies, practices and customs of the RTPD. John Doe Police Officer is sued in his individual capacity.

4. Defendant Jonnie W. Schooley III ("Schooley") is an adult individual employed by the Pennsylvania State Police ("PSP") at Troop D Station at 1400 Brighton Road, Beaver, Pennsylvania 15009 ("Troop D Beaver"). At all relevant times, Schooley acted under color of state law, in the scope of his employment and in accordance with the policies, practices and customs of the PSP. Schooley is sued in his individual capacity.

5. Defendant Michael Miller ("Miller") is an adult individual employed by the PSP at Troop D Beaver. At all relevant times, Miller acted under color of state law, in the scope of his employment and in accordance with the policies, practices and customs of the PSP. Miller is sued in his individual capacity.

6. Defendant [First Name Unknown] Greener ("Greener") is an adult individual employed by the PSP at Troop D Beaver. At all relevant times, Greener acted under color of state law, in the scope of his employment and in accordance with the policies, practices and customs of the PSP. Greener is sued in his individual capacity.

7. John Doe Police Officer, Schooley, Miller, and Greener are collectively referred to as "Defendants."

**JURISDICTION AND VENUE**

8. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because each claim arose in the Western District of Pennsylvania.

**FACTS**

10. On January 3, 2021, while delivering groceries via Patterson Road in Aliquippa, Pennsylvania, a black SUV pulled within inches of the rear bumper of the vehicle being driven by Mr. Willis.

11. The black SUV approached at a high rate of speed.

12. Shortly thereafter, the black SUV drove into the wrong lane of the two-lane road and pulled beside the vehicle being driven by Mr. Willis.

13. Mr. Willis saw the driver of the black SUV pointing a handgun directly at him.

14. The driver of the black SUV was John Doe Police Officer, and he was wearing a black winter hat bearing the insignia, "POLICE."

15. Shocked upon seeing the handgun, Mr. Willis swerved his vehicle and drove onto the shoulder; in response, John Doe Police Officer forced him further onto the shoulder with his vehicle until Mr. Willis crashed into a parked truck on the front lawn of a nearby house.

16. At no time did John Doe Police Officer use visual or audible signals on the black SUV he was driving, and the black SUV had no visible police markings of any kind, only a license plate marking the vehicle as government owned.

17. After the collision, Mr. Willis unlatched his seatbelt and put his hands on the ceiling of the vehicle, while John Doe Police Officer, with his service weapon still drawn and aimed at Mr. Willis, ran toward him violently screaming.

18. When John Doe Police Officer reached Mr. Willis' vehicle, he opened the driver's side door and used a closed fist to strike Mr. Willis in the face.

19. John Doe Police Officer then forcibly removed Mr. Willis from the vehicle.

20. Mr. Willis was neither resistive nor combative.

21. While Mr. Willis was laying with his chest on the ground and his hands behind his back, John Doe Police Officer used at least one more closed fist punch to strike him directly in the face.

22. At all relevant times, John Doe Police Officer was pressing his service weapon into the small of Mr. Willis' back until the gun was lifted off his back and discharged directly into the ground beside him.

23. The gunshot occurred only inches from Mr. Willis' body.

24. All the while, because John Doe Police Officer failed to place his vehicle into park upon exiting it, the vehicle rolled backwards across the street until it ultimately came to arrest on the lawn of the Raccoon Township Volunteer Fire Department.

25. After John Doe Police Officer discharged his service weapon, a nearby bystander attempted to intercede in the assault, but John Doe Police Officer told him something like, "police officers do not kill innocent Black men," to distract his attention.

26. At that point, John Doe Police Officer holstered his service weapon and asked the bystander to watch Mr. Willis as he went across the street and retrieved his vehicle.

27. John Doe Police Officer used the racial epithet "n****" multiple times while speaking with Mr. Willis and referred to him as "you people."

28. John Doe Police Officer also recovered his spent shell casing from the ground, attempting to destroy any evidence of the officer-involved shooting.

29. According to John Doe Police Officer, the reason for his conduct was because of an alleged minor traffic offense that occurred about five miles prior to the site of the officer-involved shooting.

30. A police officer from the Center Township Police Department ("CTPD") arrived on scene shortly after John Doe Police Officer discharged his service weapon (referred to as the "CTPD Officer").

31. The first thing that the CTPD Officer did when he arrived on scene was to take John Doe Police Officer into his police vehicle and question him privately.

32. At all relevant times, John Doe Police Officer remained armed and uncuffed.

33. The CTPD Officer then told Mr. Willis that the PSP were on their way.

34. Mr. Willis attempted to tell the CTPD Officer what had happened, but he was ignored and left to remain detained and handcuffed.

35. Greener, Schooley, and Miller (along with six to eight additional PSP vehicles) arrived on scene at least 25 minutes after John Doe Police Officer discharged his service weapon.

36. When they arrived, Schooley placed Mr. Willis into a PSP vehicle, while Greener and Miller spoke with John Doe Police Officer.

37. Miller advised John Doe Police Officer "not to talk to anyone else."

38. Miller then directed that Mr. Willis be searched for the first time.

39. Mr. Willis was unarmed and free of any illicit substances or objects.

40. Mr. Willis was forced to remain in the back of the PSP vehicle for over an hour without being mirandized and without being notified of any criminal charges.

41. Over an hour after the original incident had occurred, Mr. Willis asked Schooley, Miller, and/or Greener whether he was under arrest and/or being charged, to which they all responded that "they were working on that."

42. Mr. Willis then overheard Schooley, Miller, and/or Greener state to each other, "what about a DUI?" as though they were attempting to create a criminal narrative to justify the officer-involved shooting, as well as the unjustified use of force, involving John Doe Police Officer.

43. Eventually, Mr. Willis was transported to the PSP's Troop D Barracks in Beaver County, Pennsylvania where he was interrogated and mirandized.

44. The interrogation was audio and video recorded.

45. During the interrogation, Mr. Willis explained what occurred between him and John Doe Police Officer and described the way in which John Doe Police Officer discharged his service weapon after striking him in the face multiple times with a closed fist.

46. At all relevant times, Schooley, Miller, and Greener intentionally refused to provide Mr. Willis with any information about the identity of John Doe Police Officer.

47. At all relevant times, Schooley, Miller, and Greener were in possession of the factual accounts of independent witnesses that corroborated Mr. Willis' explanation of events.

48. Nearly three hours after the incident with John Doe Police Officer, Schooley, Miller, and/or Greener decided to give Mr. Willis a "field sobriety test," after which they informed him that he failed him because "he was shaky and had an increased heart rate."

49. Mr. Willis was then forced to either consent to a blood draw at the hospital or forfeit his driver's license for refusing to submit to the blood draw.

50. Mr. Willis provided consent under duress and was transported to a hospital.

51. After Mr. Willis had his blood drawn, Schooley, Miller, and/or Greener told him he was free to leave, which was over four hours after the officer-involved shooting.

52. No criminal charges were ever filed against Mr. Willis.

53. To date, Mr. Willis has not been provided the identity of John Doe Police Officer despite repeated attempts and requests for that information.

## Count I

### Excessive Force Pursuant to 42 U.S.C. § 1983

### (Mr. Willis vs. John Doe Police Officer)

54. All paragraphs herein are incorporated by reference.

55. As a direct result of the conduct described herein, John Doe Police Officer violated Mr. Willis' right to be free from the use of excessive force against him under the Fourth Amendment of the United States Constitution by effectuating an unlawful arrest through the use of unjustified and excessive force.

## Count II

### False Arrest Pursuant to 42 U.S.C. § 1983

### (Mr. Willis vs. All Defendants)

56. All paragraphs herein are incorporated by reference.

57. As a direct result of the conduct described herein, Defendants violated Mr. Willis' right to be free from false arrest under the Fourth Amendment of the United States Constitution by seizing and detaining him without probable cause.

## Count III

## False Imprisonment Pursuant to 42 U.S.C. § 1983

### (Mr. Willis vs. All Defendants)

58. All paragraphs herein are incorporated by reference.

59. As a direct result of the conduct described herein, Defendants violated Mr. Willis' right to be free from false imprisonment under the Fourth Amendment of the United States Constitution by seizing and detaining him without probable cause.

## Count IV

## Civil Conspiracy Pursuant to 42 U.S.C. § 1983

### (Mr. Willis vs. All Defendants)

60. All paragraphs herein are incorporated by reference.

61. Defendants entered into an explicit agreement through which they agreed to unlawfully detain and/or arrest Mr. Willis to justify the officer-involved shooting.

62. Defendants carried out this agreement by unlawfully detaining and/or arresting Mr. Willis, and by forcing him to submit to a blood draw when they knew or reasonably should have known that he was not driving under the influence.

63. The object or purpose of this agreement was to unlawfully seize Mr. Willis and deprive him of his right to due process of law or in contravention to the well-settled principles of the Fourth Amendment to the United States Constitution.

**Prayer for Relief**

WHEREFORE, Mr. Willis respectfully requests that judgment be entered in his favor and against all Defendants:

    (i)      Actual damages,

    (ii)     Compensatory damages,

    (iii)    Punitive damages,

    (iv)    Attorney's fees, witness fees and costs, and

    (v)     All other relief as this Court deems just and proper.

Respectfully submitted,

THE LAW OFFICES OF TIMOTHY P. O'BRIEN

/s/ Alec B. Wright
Alec B. Wright
Pa. ID No. 316657

Henry W. Oliver Building
535 Smithfield Street, Suite 1025
Pittsburgh, Pennsylvania 15222
(412) 260-1662
abw@obrienlawpgh.com

*Counsel for Plaintiff*