IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMMITT WILLIS,** | CIVIL ACTION NO. 2:21-cv-221 |
| Plaintiff, | JUDGE JOY FLOWERS CONTI |
| v. | |
| **JUSTIN MONTANI** | |
| Defendant, | |

## MEMORANDUM OPINION

I. Introduction

Pending before the court is a motion for partial summary judgment (ECF No. 72) filed on behalf of Defendant, police officer Justin Montani ("Montani") of the Raccoon Township Police Department ("RTPD"), with concise statement of material facts ("CSMF"), appendix and brief in support (ECF Nos. 70, 71, 73). Plaintiff Emmitt Willis ("Willis") filed a response in opposition, his own CSMF, a response to Montani's CSMF and an appendix (ECF Nos. 75-78). Montani filed a reply brief and a responsive CSMF (ECF Nos. 79, 80). A combined concise statement of material facts ("CCSMF") was filed on October 23, 2023 (ECF No. 81).

Although Montani captioned his motion as one for "partial" summary judgment, he seeks dismissal with prejudice of count 1 (excessive force) and he requests that the court "enter judgment in his favor and against Plaintiff." (ECF No. 72). The motion is ripe for decision.

II. Factual and Procedural History

At a status conference on February 28, 2023, Willis withdrew all claims except the excessive force claim. *See* Order (ECF No. 63). The factual record is construed in the light most favorable to Willis, the nonmovant.[1]

This case arises out of an incident on January 3, 2021. Willis was driving his girlfriend's car while delivering groceries to a customer. CCSMF at 17. Montani was off-duty and driving his personal vehicle (which did not have police lights or a siren or visible police markings) on his way to work. CCSMF at 21. According to Sergeant Ronald Lutton ("Lutton"), second in command at RTPD, their policy prohibits off-duty officers from making traffic stops in their personal vehicles, except in circumstances of an imminent threat to the safety of the officer or others. CCSMF at 21, 31.

On Green Garden Road, a two-lane road with a 45-mile per hour speed limit, a semi-truck tanker slowed down to 15 miles per hour up a steep hill and moved over to the edge of the road to allow Willis' car and other vehicles to pass. CCSMF at 17-18. Willis, and Montani close behind him, passed the tanker. Montani followed Willis (who was driving the speed limit) and did not call to report a violation or seek assistance. A few miles later, on Patterson Road, Montani swerved into the opposing lane of traffic, pulled directly beside Willis, brandished his service weapon at him, and attempted to hit Willis' back tire. CCSMF at 19-20.

Willis crashed into a parked car. CCSMF at 22. Willis immediately put his hands on the roof of his car. *Id.* Within seconds, Montani approached Willis with his gun drawn. *Id.* Montani saw that Willis was unarmed. Montani's weapon remained drawn. *Id.* According to Lutton, RTPD police officers must holster their weapons before going "hands on" with a suspect. CCSMF at 32. Montani punched Willis and pulled Willis out of the car. CCSMF at 23, 25. Willis never resisted arrest and went right to the ground. CCSMF at 24.

---

[1] The CCSMF will be cited for the facts favorable to Willis.

Montani pressed the barrel of his firearm into the small of Willis' back as Montani straddled Willis' legs. CCSMF at 26. Montani discharged his firearm while he was trying to handcuff Willis. *Id.* The discharge went into the ground directly beside Willis. CCSMF at 27. Montani testified that the discharge was accidental. After the discharge, Montani punched Willis a second time, knocking his glasses off. CCSMF at 27, 29. Montani handcuffed Willis, but did not tell Willis why he was being arrested. CCSMF at 28.

Montani called Lutton to come to the scene. CCSMF at 30. While waiting for Lutton, Montani picked up the spent shell casing from the ground. CCSMF at 31. Lutton learned from dispatch that Montani discharged his weapon. CCSMF at 30. There were two eyewitnesses to the incident, Michael Palmer and Karl Nejak, who provided deposition testimony.[2] CCSMF at 36.

### III.   Standard of Review

The court summarized the familiar summary judgment standard in *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183 (3d Cir. 2022), as follows:

> The summary judgment standard has not substantively changed since a trilogy of Supreme Court cases on the topic in 1986. By the text of Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000). As explained by the Supreme Court, for a factual dispute to be material, its resolution must have the potential to affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.*, but "the mere existence of a scintilla of evidence" favoring the non-moving party will not prevent summary judgment, *id.* at 252, 106 S.Ct. 2505. *See also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018). Still, in assessing the genuineness of a potential factual dispute, inferences from the underlying facts should be drawn in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *In re IKON Office Solutions, Inc.*, 277 F.3d 658, 666

---

[2] Some of these facts are disputed but, to repeat, at the summary judgment stage the record must be construed in the light most favorable to the nonmoving party, Willis.

> (3d Cir. 2002). But if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial," then summary judgment is appropriate for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

*SodexoMAGIC*, 24 F.4th at 203–04.

IV. Analysis

 A. Legal Overview

Section 1983 affords a means to redress violations of federal law committed by state actors. In pertinent part, § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. ...

42 U.S.C. § 1983. As explained in *Washington v. Delisma,* No. 3:19-CV-00196, 2022 WL 1462291, at *1 (W.D. Pa. Mar. 31, 2022), *aff'd sub nom. Washington v. Delsima*, No. 22-1874, 2022 WL 3009743 (3d Cir. July 29, 2022):

> Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a Section 1983 claim, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States ... by a person acting under color of state law." *Id.* (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

*Id.* at *8. There is no dispute that Montani was acting under color of state law at all times relevant to this litigation.

This case involves disputes arising under the Fourth Amendment, made applicable to the states through the Fourteenth Amendment. *Whiting v. Bonazza*, No. CIV. 09-1113, 2011 WL 500797, at *6 (W.D. Pa. Feb. 10, 2011). The elements of an excessive force claim are: "(a) a

4

seizure occurred; and (b) that seizure was unreasonable." *El v. Wehling*, 2015 WL 1877667, at *8 (D.N.J. Apr. 23, 2015) (citing *Rivas v. City of Passaic*, 365 F.3d 188, 198 (3d Cir. 2004)). The Supreme Court instructs that claims of excessive force implicating the Fourth Amendment are heavily dependent on the factual context, which at the summary judgment stage must be viewed in the light most favorable to the nonmoving party:

> In assessing a claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).2 "A court (judge or jury) cannot apply this standard mechanically." *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015). Rather, the inquiry "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Those circumstances include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397, 135 S.Ct. 2466.

*Lombardo v. City of St. Louis, Missouri*, 141 S. Ct. 2239, 2241 (2021) (reversing a grant of summary judgment in favor of the officer). The court emphasized: "Such details could matter when deciding whether to grant summary judgment on an excessive force claim." *Id.* The court reiterated that the record evidence must be viewed in the light most favorable to the plaintiff. *Id.*

B. <u>Application to this case</u>

Here, there is no dispute that a seizure occurred. The issue is whether the seizure was reasonable. Montani's motion is narrowly focused on whether or not his discharge of his weapon was accidental. Montani argues, citing *Brice v. City of York*, 528 F. Supp.2d 504 (M.D. Pa. 2007), that because an excessive force claim cannot be based on non-volitional acts, Willis' claim fails as a matter of law because Montani's discharge of his firearm was accidental.

Willis, in response, maintains that his excessive force claim is not limited to the discharge of the firearm, but is based on the entire incident, which included numerous volitional acts by

Montani.  Willis argues that a reasonable jury could find that Montani acted unreasonably in following Willis; pulling alongside him; brandishing his weapon from the car; forcing Willis to crash; pulling Willis out of the car with his weapon drawn; pressing the firearm into the small of Willis' back; and punching him multiple times when Willis did not resist.  Willis also challenges Montani's self-serving testimony that the discharge was accidental.  He contends that a jury could conclude, from the objective circumstances, that Montani intentionally discharged his weapon in order to secure Willis' compliance with being handcuffed.

Montani's reliance on *Brice* is misplaced.  *Brice* appears to represent a minority position and there is no precedential decision issued by the Court of Appeals for the Third Circuit.  In *Stamps v. Town of Framingham*, 38 F. Supp. 3d 146, 152 (D. Mass. 2014), aff'd, 813 F.3d 27 (1st Cir. 2016), the court commented that "[m]ultiple courts have concluded or at least suggested that the accidental firing of a weapon in the course of an intentional seizure can give rise to an excessive force claim under the Fourth Amendment." *Id.* at 152 (collecting decisions of the courts of appeals for the 4th, 5th, 6th, 8th and 9th circuits).  The court explained:  "After *Graham*, the law has been clear that it does not matter whether the police officer subjectively intended no harm—that is, whether it was an 'accident,' as opposed to an intentional infliction of harm.  Instead, the question is whether the police officer's conduct was objectively reasonable." *Id.* at 156.

The court concluded in *Stamps* that "in light of the Supreme Court precedent and the overwhelming weight of appellate authority, it was clearly established as of January 5, 2011, that an unintentional shooting during an intentional seizure can constitute excessive force if the officer's conduct leading to the accident was objectively unreasonable." *Id.*  The court specifically commented that *Brice*, to the extent it turned "on the officer's subjective intent (that is, whether the shooting in question was an "accident") rather than the objective reasonableness

6

of the officer's actions (that is, whether the officer's conduct, from an objective viewpoint, resulted in excessive force) [ ] appear[s] to be wrongly decided." *Id.* n.8.

On appeal, the First Circuit Court of Appeals affirmed and explained:

> There is widespread agreement among the circuits that have addressed the issue that a claim is stated under the Fourth Amendment for objectively unreasonable conduct during the effectuation of a seizure that results in the unintentional discharge of an officer's firearm. That reasoning underlies the decisions in recent cases like *Estate of Bleck ex rel. Churchill v. City of Alamosa*, 540 Fed.Appx. 866, 874–77 (10th Cir. 2013), cert. denied, —— U.S. ——, 134 S.Ct. 2845, 189 L.Ed.2d 808 (2014), and *Watson v. Bryant*, 532 Fed.Appx. 453, 457–58 (5th Cir. 2013) (per curiam) ("An undisputedly accidental shooting ... does not end the inquiry. [The officer] still may have violated the Fourth Amendment if he acted objectively unreasonably by deciding to make an arrest, by drawing his pistol, or by not reholstering it before attempting to handcuff [the plaintiff]."). As the en banc court stated in *Henry v. Purnell*, 652 F.3d 524 (4th Cir.2011) (en banc), cert. denied, —– U.S. ——, 132 S.Ct. 781, 181 L.Ed.2d 488 (2011), "[a]ll actions, ... mistaken or otherwise, are subject to an objective test," id. at 532.

*Stamps v. Town of Framingham*, 813 F.3d 27, 37 (1st Cir. 2016)

This court need not finally determine whether *Brice* was wrongly decided because the facts and legal issue in *Brice* are distinguishable from this case. In *Brice*, it was uncontested that the discharge was accidental. Here, the issue is disputed. Although Willis testified in his deposition that he had no way of knowing why Montani discharged the weapon (i.e., Montani's subjective intent), plaintiff's counsel argues strenuously that a reasonable jury could infer from the objective circumstances an intent by Montani to fire the gun to secure Willis' compliance with being handcuffed. The court agrees with plaintiff that under the circumstances of this case, the jury could disbelieve Montani's self-serving testimony that the discharge was accidental.

In *Brice*, the focus of the inquiry was whether an accidental shooting could constitute a "seizure." The court explained that a "seizure" must result from volitional police activity. *Brice*, 528 F. Supp.2d at 510. In this case, it is undisputed that there was a seizure. Montani seized Willis – wholly apart from the discharge of his firearm – and placed him in handcuffs. The issue in this case, in contrast to *Brice*, is whether Montani's conduct throughout the encounter was

7

"reasonable."  That is a quintessential jury question.  *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) ("the existence of disputed historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue."); *Rawlings v. SEPTA*, No. 2:19-CV-04698, 2022 WL 15525755, at *6 (E.D. Pa. Oct. 27, 2022) ("At minimum, material questions of fact exist as to whether the Officers reasonably believed Plaintiff's flight posed a risk to them or others, which should be resolved by a jury.") (citation omitted).

Here, unlike *Brice*, viewed in the light most favorable to Willis, there is a pattern of alleged unreasonable conduct by Montani in initiating and pursuing the chase, causing the crash and engaging in a hands-on encounter with a drawn weapon.  As the court noted in *Stamps*, it has long been clearly established "that the unintentional or accidental use of deadly force during a seizure can give rise to a constitutional violation if the officer has acted unreasonably in creating the danger."  *Stamps*, 38 F. Supp.3d at 154 (citations omitted).  The court reiterated:  "Since *Brower*, every circuit court to consider the issue has concluded or at least suggested that the unintentional discharge of a firearm during a seizure can give rise to a Fourth Amendment claim if the officer's actions leading up to the shooting were objectively unreasonable."  *Id.* at 155.

Summary judgment is not appropriate in this case because a reasonable jury, viewing the record in the light most favorable to Willis, could conclude that Montani acted unreasonably leading up to the discharge of his weapon.

C.  Conclusion

For the reasons set forth above, the motion for summary judgment (ECF No. 72) will be denied.  A pretrial scheduling conference will be held by telephone on November 28, 2023 at 1:30 p.m.

An appropriate order follows.

Dated:  November 14, 2023

BY THE COURT,

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge